**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| **FLEET TRUCK SALES, INC.,** | |
| Plaintiff, | 8:16CV366 |
| vs. | |
| **CELADON GROUP, INC., and QUALITY COMPANIES, LLC,** | MEMORANDUM AND ORDER |
| Defendants. | |

This matter is before the Court on the Renewed Motion for Summary Judgment, ECF No. 113, and the Objection to Index and Motion to Strike, ECF No. 121, both filed by Defendant Celadon Group, Inc. For the reasons stated below, the Motion for Summary Judgment will be granted and the Motion to Strike will be denied as moot.

## BACKGROUND

Unless otherwise indicated, the following facts are those stated in the parties' briefs, supported by pinpoint citations to admissible evidence in the record, in compliance with NECivR 56.1[1] and Federal Rule of Civil Procedure 56.

After the Court ruled on the parties' initial motions for summary judgment, Memorandum and Order, ECF No. 103, the Court[2] issued a Second Amended

---

[1] *See* NECivR 56.1(b)(1):
The party opposing a summary judgment motion should include in its brief a concise response to the moving party's statement of material facts. The response should address each numbered paragraph in the movant's statement and, in the case of any disagreement, contain pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials upon which the opposing party relies. <u>Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response.</u>

[2] Judge Michael D. Nelson, United States Magistrate Judge for the District of Nebraska.

Progression Order, ECF No. 106, which permitted the parties to conduct further discovery on the remaining issues and file additional dispositive motions. Accordingly, the Court incorporates, by reference, the background discussion from the previous Memorandum and Order (SJ Order) and provides the following summary and additional background:

Plaintiff Fleet Truck Sales, Inc., (Fleet) entered into two purchase agreements with Quality Equipment Sales for the sale of commercial trucks, one on September 3, 2015, and another on September 9, 2015. Under the first purchase agreement, Fleet agreed to sell Quality Equipment Sales 163 Volvo commercial trucks for $9,454,000 with $81,500 of the purchase price due as a cash deposit. Under the second purchase agreement, Fleet agreed to sell Quality Equipment Sales 169 Peterbilt commercial trucks for $10,309,000 with $84,500 of the purchase price due as a cash deposit. Fleet never received the purchase price on either contract and contends it did not receive either of the respective cash deposits. Accordingly, Fleet brought this action for breach of contract.

Quality Equipment Sales is not a business entity, but an assumed name used by business entities at different times. Quality Equipment Leasing, LLC,[3] was registered to do business under the name Quality Equipment Sales from January 30, 2008, to November 15, 2011. ECF No. 86-1, Page ID 641, 648-49. Defendant Quality Companies, LLC, was registered to do business under the name Quality Equipment Sales from November 23, 2011, to September 28, 2015. ECF No. 86-1, Page ID 635-38. On September 21, 2015, Quality Equipment Leasing, LLC, reregistered to do business under the Quality Equipment Sales name and currently does business under that name. ECF

---

[3] In the SJ Order, the Court dismissed Quality Equipment Leasing, LLC, from this action.

No. 86-1, Page ID 652. There is no evidence that Defendant Celadon Group, Inc., has ever registered to do business under the Quality Equipment Sales name. Thus, at the time the purchase agreements were entered into, Quality Companies, LLC, was the only business entity registered to do business under the Quality Equipment Sales name. Each of the foregoing registrations was completed with the Indiana Secretary of State and publicly available.

Quality Companies, LLC, was the sole member of Quality Equipment Leasing, LLC; Celadon Trucking, Inc.,[4] was the sole member of Quality Companies, LLC; and Celadon Group, Inc., was the parent corporation to Celadon Trucking Services, Inc.

On February 5, 2015, Dennis Kosmicki, a Fleet sales representative, emailed Eric Meek, the Chief Operating Officer for Celadon Group, Inc., to solicit interest in purchasing equipment. Meek responded "I will have Danny [Williams] circle back with you if we need any stock." ECF No. 86-11, Page ID 577. Meek also told Kosmicki that Williams should be his point of contact because Williams was "handling all of our purchasing for used/new currently." *Id.* at Page ID 576. Williams was the Vice President of Quality Companies, LLC. Neither Meek nor Williams explained to Kosmicki or any other Fleet representative that Williams was an officer and representative of Quality Companies, LLC, and not Celadon Group, Inc.

Kosmicki and Williams finalized two purchase agreements, one in March 2015 and one in May 2015, that named Quality Equipment Sales as the purchaser. Celadon

---

[4] Celadon Trucking, Inc., was not named as defendant in this action and Fleet often fails to distinguish between Celadon Trucking, Inc., and Celadon Group, Inc. *See Bacon v. DBI/SALA*, 822 N.W.2d 14, 26 (Neb. 2012) ("[T]wo separate corporations are generally regarded as distinct legal entities even if the stock of one is owned wholly by the other.").

3

Trucking Services, Inc., made full payment on these purchase agreements. ECF Nos. 81-20 & 81-6, Page ID 442. In September, Kosmicki and Williams finalized the two purchase agreements at issue in this litigation naming Quality Equipment Sales as the purchaser. Although Kosmicki worked with Williams to finalize the agreements, Kosmicki's immediate supervisor, Larry Lamer, had to approve each of them. With Williams's approval, Patrick O'Driscoll signed the agreements on behalf of Quality Equipment Sales.

After the September purchase agreements were executed, Williams told Fleet that he was having trouble financing the purchase prices. On January 13, 2016, Williams sent Kosmicki an email recommending that Fleet sell the trucks subject to the September purchase agreements to other buyers.

Previously, in 2010, Kosmicki and Meek also finalized several similar purchase agreements for commercial trucks between Fleet and Quality Equipment Sales. ECF No. 119-5. Paul Will, another Celadon Group, Inc., representative was also involved. As with the March and May purchase agreements, Celadon Trucking, Inc., satisfied the payment obligations on the 2010 purchase agreements.

## STANDARD OF REVIEW

Fleet argues that the Court should construe Celadon Group, Inc.'s, Renewed Motion for Summary Judgment as a motion under Fed. R. Civ. P. 54(b) because the Motion asks the Court to revisit a prior ruling based on a legal argument that could have been, but was not, raised in its initial summary judgment motion. *See, e.g.*, *Auto Servs. Co. v. KPMG, LLP*, 537 F.3d 853, 857 (8th Cir. 2008) (citing Fed. R. Civ. P. 54(b)). Yet the Second Amended Progression Order expressly granted the parties permission to file

4

another motion for summary judgment and Fleet never objected to that Order or sought to restrict the scope of the motions. *See* Fed. R. Civ. P. 72; *Fenney v. Dakota, Minn. & E. R.R. Co.*, 327 F.3d 707, 718 (8th Cir. 2003) (citing *Whitford v. Boglino*, 63 F.3d 527, 530 (7th Cir. 1995) ("[T]he district court may, in its discretion, allow a party to renew a previously denied summary judgment motion . . . .")). Thus, recognizing that the Motion raises an argument that could have been made in the initial motion for summary judgment, the Court will not apply the Rule 54(b) standard of review. It will apply the standard applicable to a Rule 56 motion for summary judgment.

"Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Garrison v. ConAgra Foods Packaged Foods, LLC*, 833 F.3d 881, 884 (8th Cir. 2016) (citing Fed. R. Civ. P. 56(c)). "Summary judgment is not disfavored and is designed for every action." *Briscoe v. Cty. of St. Louis*, 690 F.3d 1004, 1011 n.2 (8th Cir. 2012) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc)). In reviewing a motion for summary judgment, the Court will view "the record in the light most favorable to the nonmoving party . . . drawing all reasonable inferences in that party's favor." *Whitney v. Guys, Inc.*, 826 F.3d 1074, 1076 (8th Cir. 2016) (citing *Hitt v. Harsco Corp.*, 356 F.3d 920, 923–24 (8th Cir. 2004)). Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Se. Mo. Hosp. v. C.R. Bard, Inc.*, 642 F.3d 608, 618 (8th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The moving party

5

need not produce evidence showing "the absence of a genuine issue of material fact." *Johnson v. Wheeling Mach. Prods.*, 779 F.3d 514, 517 (8th Cir. 2015) (quoting *Celotex*, 477 U.S. at 325). Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *St. Jude Med., Inc. v. Lifecare Int'l, Inc.*, 250 F.3d 587, 596 (8th Cir. 2001) (quoting *Celotex*, 477 U.S. at 325).

In response to the moving party's showing, the nonmoving party's burden is to produce "specific facts sufficient to raise a genuine issue for trial." *Haggenmiller v. ABM Parking Servs., Inc.*, 837 F.3d 879, 884 (8th Cir. 2016) (quoting *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Wagner v. Gallup, Inc.*, 788 F.3d 877, 882 (8th Cir. 2015) (quoting *Torgerson*, 643 F.3d at 1042). "[T]here must be more than the mere existence of some alleged factual dispute" between the parties in order to overcome summary judgment. *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1061 (8th Cir. 2016) (quoting *Vacca v. Viacom Broad. of Mo., Inc.*, 875 F.2d 1337, 1339 (8th Cir. 1989)).

In other words, in deciding "a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Wagner*, 788 F.3d at 882 (quoting *Torgerson*, 643 F.3d at 1042). Otherwise, where the Court finds that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," there is no "genuine issue of material fact" for trial

and summary judgment is appropriate. *Whitney*, 826 F.3d at 1076 (quoting *Grage v. N. States Power Co.-Minn.*, 813 F.3d 1051, 1052 (8th Cir. 2015)).

**DISCUSSION**

The parties do not dispute that Quality Companies, LLC, was a party to the September purchase agreements, and the Court previously held that Fleet is limited to recovering its liquidated damages.[5] SJ Order, ECF No. 103, Page ID 935-38. However, Fleet contends Celadon Group, Inc., may also be held liable for the breach of the September purchase agreements based on the agency theory of apparent-authority, *i.e.*, that Williams acted with the apparent authority to make Celadon Group, Inc., a party to the September purchase agreements. Celadon Group, Inc.'s, Motion for Summary Judgment argues Celadon Group, Inc., should be dismissed from this action because there is insufficient evidence to support that theory of liability.

An agency relationship arises where "the principal 'manifests assent' to the agent that the agent will 'act on the principal's behalf and subject to the principal's control[,]' and the agent "consents so to act." *RM Campbell Indus., Inc. v. Midwest Renewable Energy, LLC*, 886 N.W.2d 240, 251 (Neb. 2016) (quoting *Koricic v. Beverly Enters.—Neb., Inc.*, 773 N.W.2d 145, 150 (Neb. 2009). The relationship "may be implied from the words and conduct of the parties and the circumstances of the case evidencing an intention to create the relationship irrespective of the words or terminology used by the parties to characterize or describe their relationship." *RM Campbell Indus.*, 886 N.W.2d at 251-52.

---

[5] The liquidated damages provision contained in each of the September purchase agreements states "the parties agree that liquidated damages in an amount equal to the Cash Deposit shall be paid by either party who breaches this contract." ECF No. 81-10, Page ID 570-73. The parties dispute whether the cash deposits were paid.

"Apparent authority is authority that is conferred when the principal affirmatively, intentionally, or by lack of ordinary care causes third persons to act upon an actor's apparent authority." *Kohout v. Bennett Constr.*, 894 N.W.2d 821, 828 (Neb. 2017). An agent's "power to affect the principal's legal relationships with third parties[,]" through apparent authority, "arises from, and is limited to, the principal's manifestations to those third parties about the relationships." *Id*. Thus, "apparent authority for which a principal may be liable exists only when the third party's belief is traceable to the principal's manifestation and cannot be established by the actor's acts, declarations, or conduct." *Id*. The third party's belief that an agent is apparently acting with proper authority must also be reasonable. *Koricic*, 773 N.W.2d at 152. Whether an agency relationship exists and whether an agent had the apparent authority to act on the principal's behalf are factual questions. *Id*. at 149, 152.

In the SJ Order, the Court concluded that although the September purchase agreements expressly stated Williams had the authority to sign the agreements for Quality Equipment Sales, the February email correspondence between Kosmicki and Meek raised a factual question as to whether Fleet reasonably believed Williams was acting with the apparent authority to make Celadon Group, Inc., a party to the September purchase agreements. ECF No. 103, Page ID 943-44. Based on Nebraska Supreme Court precedent, Celadon Group, Inc., now raises an argument that was not, but could have been, raised in its initial summary judgment motion regarding Williams's apparent authority to enter into the September purchase agreements on Celadon Group, Inc.'s, behalf.

Citing *Franksen v. Crossroads Joint Venture*, Celadon Group, Inc., argues Fleet cannot establish that Williams had the apparent authority to act on Celadon Group, Inc.'s, behalf because Fleet should have inquired about Williams's authority. 515 N.W.2d 794, 801 (Neb. 1994). In *Franksen*, the Nebraska Supreme Court explained that "[o]ne who is placed on inquiry as to an agent's or employee's authority, and who has reasonable means of making inquiry, occupies the same position in law as if he had actual knowledge of the employee's lack of authority, because he is charged with knowledge of the facts which the inquiry would have developed." *Id.* Because the September purchase agreements stated Williams had the authority to sign the agreements on behalf of the purchaser, and the agreements listed Quality Equipment Sales as the purchaser, Celadon Group, Inc., contends Fleet was put on inquiry regarding Williams's authority to make Celadon Group, Inc., a party to the agreements. The Court finds this argument persuasive.

Fleet argues it reasonably believed it was contracting with Celadon Group, Inc., when it entered into the September purchase agreements and that Williams had the apparent authority to enter into those contracts on Celadon Group, Inc.'s, behalf. If that was Fleet's belief, however, Fleet was "put on inquiry" as to whether it was actually contracting with Celadon Group, Inc., and whether Williams had the apparent authority to enter into the agreements on Celadon Group, Inc.'s, behalf when the agreements expressly stated otherwise. The agreements listed Quality Equipment Sales as the purchaser and stated Williams had the authority to execute them on behalf of Quality Equipment Sales. *Id.* Celadon Group, Inc., has never registered to do business under the Quality Equipment Sales name and it was not holding itself out as doing business

under that name. SJ Order, ECF No. 103, Page ID 940-941 (finding that one statement on a Celadontrucking.com webpage was insufficient evidence to establish that Celadon Group, Inc., was holding itself out as doing business as Quality Equipment Sales). Thus, the Court concludes that Fleet was put on inquiry, and had reasonable means of making inquiry, as to whether Williams had the apparent authority to execute the September purchase agreements on Celadon Group, Inc.'s, behalf. As such, Fleet is charged with actual knowledge of the fact that Quality Equipment Sales was an assumed name officially registered to Quality Companies, LLC, and that Williams did not have the authority to execute the agreements on Celadon Group, Inc.'s, behalf. *Franksen*, 515 N.W.2d at 801.

The parties' course of dealing further supports this conclusion. Prior to the September purchase agreements, Kosmicki and Williams finalized the March and May purchase agreements between Fleet and Quality Equipment Sales. Celadon Trucking, Inc.—not Celadon Group, Inc.—satisfied the payment obligation on both. Celadon Trucking, Inc., also satisfied the payment obligations on the 2010 purchase agreements between Fleet and Quality Equipment Sales. ECF No. 119-5. Celadon Group, Inc., was not listed as the purchaser on any of these agreements and it never made payment on them. This course of dealing put Fleet on inquiry as to whether Williams had the authority to make Celadon Group, Inc., liable for the September purchase agreements. To presume Williams had such authority would be inconsistent with the parties' prior course of dealing.

Fleet argues that it is commercially unreasonable, "absurd," and contrary to Nebraska law to "suggest[ ] that Fleet should have investigated Celadon[ ] [Group, Inc.'s]

10

corporate status and filings with the Indiana Secretary of State . . . ." Pl.'s Br., ECF No. 118, Page ID 1050. The Court does not make that suggestion. Rather, based on the undisputed facts in the record, the Court finds that Fleet was at least placed on inquiry regarding Williams's authority to enter into the September purchase agreements on Celadon Group, Inc.'s behalf. Fleet is therefore, as a matter of Nebraska law, charged with knowledge of Williams's lack of authority with respect to Celadon Group, Inc. It is also charged with knowledge of the fact that Quality Equipment Sales was an assumed name registered to Quality Companies, LLC.

**CONCLUSION**

Based on the face of the September purchase agreements and the parties' prior course of dealing, the Court finds that Fleet was put on inquiry regarding Williams's authority. Therefore, as a matter of Nebraska law, Fleet is charged with knowledge of the fact that Williams did not have authority to execute the September purchase agreements on Celadon Group, Inc.'s, behalf and that Quality Equipment Sales was an assumed name registered to Quality Companies, LLC. As such, Fleet's agency theory of apparent authority does not establish Celadon Group, Inc.'s, liability for the agreements, and Celadon Group, Inc., will be dismissed from this action.

IT IS ORDERED:

1. The Renewed Motion for Summary Judgment, ECF No. 113, filed by Defendant Celadon Group, Inc., is granted;

2. The Objection to Index and Motion to Strike, ECF No. 121, filed by Defendant Celadon Group, Inc., is denied as moot; and

3. Celadon Group, Inc., is dismissed from this action.

11

Dated this 11th day of September, 2018.

                                              BY THE COURT:

                                              s/Laurie Smith Camp
                                              Chief United States District Judge